The opinion of the Court was delivered by
Wardlaw, J.
Courts of Equity, in promotion of right, sometimes consider as done that which should have been done. On this principle, latid directed by a testator to be. sold and turned into money, is considered as personalty before an actual sale. Fletcher vs. Ashburner, 1 Br. C. C., 497 ; W. and T. L. C., 546 ; North vs. Valk, Dud. Eq., 212. Equitable conversion of realty into personalty is effected in strictness only where a sale of the land is ordered, and dis *548 position of the proceeds is made; but if the intention to dispose of the subject as personalty can be ascertained from the face of the will, it may not be indispensable that a sale should be explicitly directed as a means of conversion. Chancellor Dargan says, with sufficient precision, in Perry vs. Logan, 5 Rich., 202, “ whenever it is apparent, from the words of the will that the testator meant that his real estate, in that form, should not pass into the possession of the objects of his testamentary bounty, but should be converted into money, and as money, come to those for whom he designs the benefaction, this will be considered in equity as a bequest of personalty. Under such circumstances, it will be treated, in all respects, as if the conversion had been made by the testator in his lifetime.” So, too, cases might be within the principle of conversion as to some incidents, where no alteration of the form of the estate was contemplated. Thus, if a testator should give his land to his son, and his slaves to his daughter, and express his intention that the land and slaves should contribute to the payment of his debts, ratably to their respective values, his will would be the law between his two children, and the devisee could claim no exoneration from liability for debts. The same end might be effected by any form of words which would sufficiently exhibit testator’s intention to put the legatees on terms of complete equality, but no equivocal expression of intention can supersede the rules of law in this matter, and much less can the rules be deflected in operation by the seeming hardship of their result as to a particular legatee.
The law of this State as to the relative liability for the debts of a testator of his real and personal estate, is nearly identical with that of England, where a testator there has charged his whole estate with his debts. The statute of Geo. II, c. 7, sec, 4, 2 Stat., 571, abolishes here the distinction between real and personal estates in the payment of debts, so far as the rights of creditors are concerned, but as. between a devisee of realty and a legatee of personalty still leaves the *549 personalty as the primary fund for the payment of debts. It is settled by the elaborate judgment in Hull vs. Hull, 3 Rich. Eq., 65, as to estate of which a testator was seized and possessed'at the time of making his will, aud as between the objects of his bounty, that a specific legacy of personalty must be exhausted in payment of debts before reSort can be had to land devised,' where no different rule is prescribed in the will. Every devise of land is specific, (Broom vs. Monck, 10 Ves., 597, Warley vs. Warley, Bail., 397,) and without the aid of this principle the devise in the present instance is unquestionably specific, for it is separated and distinguished from all other lands by the terms of description': “All my lands on the Round 0., known as the Ash-hill plantation.” On the other hand, the legacy to Sarah Harriet, is not specific, (although she would not be helped if it were otherwise,) being merely the amount of the valué of the land, to be paid in negroes, without precise designation of the sum of money to which she should be entitled, or the number, names, ages or sex of the negroes to be used towards satisfaction of the legacy. Everything about the legacy is indefinite, and undistinguished from subjects of like kind.
The testator directs, “first, that all my (his) just debts be paid and discharged, and secondly, that the remainder of my (his) property be disposed of as follows;” and then proceeds to make his devise and bequests. And it is argued that this charge of his debts oil his whole estate serves to manifest his purpose to put his real and personal property in the same category, as a common and equal fund for satisfaction of his liabilities. It is naked conjecture, not founded on any fair construction of the terms and provisions of the will, that the intention of testator would be defeated by enforcing the rule of law as to the prior liability for his debts of his slaves and money. There is no intimation in the will that the testator was ignorant or mistaken as to the legal effect of his dispositions, nor of his intent or wish that there should be any departure from the usual course in the administration of his *550 assets. Every one is presumed to know the law ; and this testator must be presumed to knowthat if he forbore to make a different direction, as he had a plain right to make or forbear to make, his personalty must be applied to his debts before his lands could be used for this end. If, in fact, he knew the law, then he designed the consequences of his dispositions; and we are not authorized to conjecture, against the legal presumption of skill, and in the lack of any contrary manifestation from the context, that there has been disappointment of his purpose.
The direction of the testator that his debts be first paid, and that his devise and bequests shall operate on the rest of his estate not consumed in such payment, is merely the superfluous expression of the inevitable conclusion or implication of the law. -.It is mere surplusage, not modifying to any extent the injunction of law. It is simply announcing in words the desire of the testator to fulfil his lawful duty to be just before he undertakes to be generous. In our last case on this point, Lloyd vs. Lloyd, 10 Rich., 469, the testator directed “that all his just and lawful debts, and .all lawful charges against his estate be fully paid,” and then devised and bequeathed “ all the rest and residue of his property, real aud personal” — the words in Spell’s will are not quite so strong— and it was held that the charge of debts was superfluous, and inoperative to disturb the prior liability of personalty becjueathed generally, even to real estate acquired after making the will, and left to descend. Lloyd vs. Lloyd was decided on the authority of Henry vs. Graham, 9 Rich., 100 where the words of the will, in this respect, were, “ I direct all my just debts to be paid.” The same view was taken in Brown vs. James, 3 Strob., 24, as to the direction that just debts be paid. In that case the doctrine on this point is well put interrogatively. Does there appear, from the whole testamentary disposition taken together, an intention on the part of testator, so expressed as to convince a judicial mind, that it was meant not merely to charge the estate secondarily *551 liable, but so to charge it as to exempt the estate primarily liable in whole or in part? No such intention to exonerate the personalty can be detected in this will. The land specifically devised to the son, and to be delivered to him whenever he should become of age, is directed to be valued ; but that valuation is ordered, without any expression of desire that the land should be changed in character, or that it should be taken subject to any abnormal liability for debts ; and, indeed, valuation is directed merely to ascertain the amount of the bequest to the daughter, without changing its rank. It is very probable that the testator made the mistake, so common with men in debt, of over-estimating the net value of his estate, for we find him giving to possible children legacies equal in value to that of the daughter, and providing that his Avife should enjoy for life “ the remainder,” that is, residue of his personal property; but we cannot be sure, from his words, that if he had been premonished fully of the state of his affairs that would exist after his death, and instructed actually, as is always presumed in law, of the order of liability by law of the several portions of his estate for satisfaction of his debts, he would have changed his dispositions m any respect. We are not at liberty to conjecture, on any fanciful notions of equality and equity, that he did not intend to do that which the laws of many countries (thus exhibiting a very common sentiment of mankind) would have required him to do, namely, give superiority to his first-born of the male gender in relation to that kind of estate more immediately connected with duty to the State and the pride and aggrandizement of families. Suppose the land had been taken from the son by title paramount, it would hardly be pretended that the son could obtain contribution from his sister, on this notion of intended equality. No sentiment can be more general among men than the desire to provide for the comfortable sustenance of their surviving and bereaved consorts in life; yet Ave could not conclude, in deference to this sentiment, that because the testator gave an anticipated remainder of personalty to his *552 wife and left her without other provision, she has a valid claim on the other legatees for contribution from their legacies for her maintenance. Her dower is independent of the will, but in the event she takes nothing by gift of the testator. It would be utterly unsafe, nay, despotic, to determine judicially that a testator intended whatever the Judge may think he might to intend. Then the fact that this testator, after a charge for debts, bestowed on his legatees the remainder or residue of his estate, is supposed to demonstrate his intention of equality among them as to burdens and benefits. Similar expressions were adjudged in Lloyd vs. Lloyd, to have no such effect, and correctly so adjudged. The testator here chose to put the implication of law in the form of an express direction; yet it cannot be inferred logically that he intended anything more than the implication of law. He used the term remainder, because he knew that his testamentary gifts could have no operation on his estate, except as to the remainder left after the payment of his debts; but this does not manifest any further independent and disconnected intention on his part to derange the rank of the things given in paying debts. With all proper respect for the opinions of others, it seems to me leaping in the dark to a conclusion, to affirm that this testator meant his land devised to pay his debts before his personalty was exhausted.
The decretal orders of the Chancellor are not appealed from, and seem to be unobjectionable. We adjudge that the doctrine of the circuit decree that the land is liable for the debts of testator before the personalty be exhausted, whether this be founded on the principle of equitable conversion or any provision in the will, cannot be maintained, and must be reversed.
And it is ordered that the decree be reformed accordingly.
Johnstone, J., concurred.